State of Delaware v. James M. Deedon.

(*January* 16, 1963.)

SOUTHERLAND, Chief Justice, and WOLCOTT and TERRY, J. J., sitting.

*Thomas Herlihy, III,* Deputy Attorney-General, for the State of Delaware.

*Harvey Porter* (of the firm of Errigo, Biondi and Porter) for the defendant.

Supreme Court of the State of Delaware, No. 52, 1962.

TERRY, Justice.

The defendant, James M. Deedon, was indicted by the Grand Jury of New Castle County in absentia at the December Term, 1958. He was charged with the commission of a felony in violation of Title 11, Section 395 of the *Delaware Code* of 1953. He moved to quash the indictment, briefs were filed, and oral argument held. Following oral argument, counsel for the State and the defendant, with approval of the Court below, filed petitions with this court for certification of certain questions presented at argument. This court, on September 11, 1962, approved the certification of questions 1 through 4.

The initial question certified to this court is as follows:

"Do the provisions of Title 11, *Del. C., Sec.* 395, making it a felony to break and enter a building, or a room, or any part of the building, with intent to commit a crime therein, sufficiently and unambiguously state and define a crime?"

Interpreting this question to mean whether or not 11 *Del. C.,* Sec. 395, is sufficiently precise to escape condemnation under the due process clause of the 14th Amendment of the Federal Constitution, we are of the opinion that the answer is, yes.

■ As stated in *State v. Chase,* 11 Terry 383, 131 A.2d 178 (Superior Court, 1957) : "If the terms of a penal statute are so vague and indefinite as to render uncertain its meaning, it must be condemned as repugnant to the due process clause of the 14th Amendment of the Federal Constitution." Since the only possible area of controversy centers upon the use of the generic term, "crime," we are of the opinion that this term is sufficiently precise to provide adequate warning and guidance for future conduct. It is a well-settled rule of law that one will not be heard to plead ignorance of the law, and, therefore, all are expected to understand the meaning and usage of the term, "crime." We are reinforced in this belief by the admission of the defendant that he does not seriously contest the constitutionality of the cited statute.

■ Question 2 reads as follows:

"Is an indictment for the crime of burglary in the fourth degree (11 *Del. C.* Sec. 395) subject to dismissal under Superior Court Rule 12(b) (2) if it is alleged that the defendant did feloniously break and enter the premises involved 'with intent to commit a crime therein,' if it fails to allege with specificity the said crime defendant intended to commit?"

Interpreting this question to mean whether or not the indictment in question is subject to dismissal because of failure to allege all essential elements of a criminal offense, we are of the opinion that the answer is, yes.

The defendant was indicted as follows:

"The Grand Jury charges JAMES M. DEEDON with the following offense: a felony, in violation of Title 11, Section 395 of the *Delaware Code* of 1953.

"JAMES M. DEEDON, on the 21st day of January, 1957, in the County of New Castle, did then and there

feloniously break and enter the property of Richard Donald Furs, Inc., located at 10 West 10th Street, Wilmington, Delaware, with the intent to commit a crime therein."

The State initially contends that since the words of the indictment are drawn from the statutory language, the indictment must be considered valid if the constitutionality of the statute is upheld. It is, of course, the general rule that an indictment drawn in the language of the statute is generally sufficient. See *State v. Martin*, 2 Storey 561, 163 A.2d 256 (1960). However, it is equally well-settled that if the statute fails to delineate with specificity all the essential elements of the crime, the drafter of the indictment may not safely rely on the statutory language alone. As was stated in *State v. Lassotovitch*, 162 Md. 147, 159 A. 362, 81 A.L.R. 69 (1932): "* * * it is clear that an indictment which charges the accused with the act prohibited by the statutory language, and does nothing more, would be fatally defective in failing to allege such other facts as would enable the accused to prepare his defense." (At Page 363) Accord: *State v. Gibbs*, 134 N.J.L. 366, 48 A.2d 300 (1946); and *State v. Minnick*, 3 Storey 261, 168 A.2d 93 (Superior Court, 1960).

The question therefore is whether or not the specific crime which the defendant allegedly intended to commit is an essential element of the offense of burglary in the fourth degree. It is not sufficient for the State to contend, as it does, that the new principles of pleading have rendered obsolete much of the common law tradition. While this contention is no doubt correct, an indictment must still meet the requirements set forth in Rule 7 (c) of the Rules of Criminal Procedure of the Superior Court, *Del. C.*, wherein it is stated: "The indictment or the information shall be a plain, concise, and definite written statement of the essential facts constituting the offense charged."

Examing the decisional law in other jurisdictions which have considered this question, it is clear that the particular crime which was the subject of the alleged intent must be set out in the indictment: "It is not enough to allege generally an intent to commit 'a felony' or 'an offense,' but it is necessary, in order that the charge may be certain, to state the particular felony or other offense intended." 12 C.J.S. Burglary § 32, at Page 691.

"The rule is well-established, however, that even though in burglary and statutory housebreaking the intent, as defined by the law, is simply to commit a felony, it is not sufficient in the indictment to follow these general words, but the particular felony intended must be specified." 9 Am.Jur., Burglary, Sec. 46 (at page 262). Accord: *State v. Buchanan*, 75 Miss. 349, 22 So. 875 (1898) ; *State v. Allen*, 186 N.C. 302, 119 S.E. 504 (1923) ; *People v. Schiaffino*, 73 Cal.App. 357, 238 P. 725 (1925). It is to be noted that this rule is not confined to those cases reported a substantial period of time ago, but continue down to the present time. See e. g. *Brumfield v. State*, 206 Miss. 506, 40 So.2d 268 (1949) ; *Lowe v. State*, 163 Tex.Cr.R. 578, 294 S.W.2d 394 (1956) ; *Bays v. State*, 240 Ind. 37, 159 N.E. 2d 393 (1959).

The State has shown no authority to the contrary but contends that all of the above-cited authority is distinguishable on the ground that the predominant element of burglary in the fourth degree is the breaking and entering. It is to be noted that the statutory definition of burglary in the second degree and burglary in the third degree also contain the phrase, "any crime." The fact remains that with respect to the nature of the crime intended to be committed, 11 *Del. C.*, Sec. 395, differs from common law burglary only in that the crime intended to be committed need not be a felony. Therefore, we are of the

opinion that the well-settled rule of law which has been applied to both common law and statutory burglary is equally applicable here.

We note that the State has contended that the intent may be pleaded in general terms, citing *Evans v. United States,* 153 U.S. 584, 14 S.Ct. 934, 38 L.Ed. 830 (1894), wherein the court gave the example of "assault with intent to kill." It is surprising that the State should cite this language, since it is precisely this type of language which is absent from the instant indictment, e.g., "with the intent to commit the crime of larceny."

The State then contends that the decision in *State v. Minnick,* supra, which held a similar indictment invalid, places an intolerable burden upon law enforcement authority. It is clear, however, that although the specific crime which the defendant is alleged to have intended to commit must be set out in the indictment, it need not be set forth with the same particularity as in a prosecution for that crime itself. See *Bays v. State,* supra, and *State v. Allen,* supra. The State points to a hypothetical problem wherein the State is unsure of the nature of the crime intended to be committed. The short answer to this alleged problem is that the State should withhold prosecution until it has competent evidence of the precise nature of the crime intended to be committed.

Question 3 reads as follows:

"Should an indictment charging the crime of burglary in the fourth degree (11 *Del. C.,* Sec. 395), which alleges that the defendant did feloniously break and enter the described premises 'with intent to commit a crime therein', be quashed because of ambiguity and indefiniteness when the defendant may avail himself of a bill of particulars for the ascertainment of the crime he intended to commit?"

Interpreting this question to ask whether or not the instant indictment should be dismissed for failure to specify an essential element of the offense despite the availability of a bill of particulars, we are of the opinion that the answer is, yes.

The State has conceded that it is not the function of a bill of particulars to remedy a defective indictment. This position respects a well-settled rule of law, as was stated in *State v. Dabbs,* 228 La. 960, 84 So.2d 601 (1955): "There can be no prosecution on a bill of particulars. Nor can the contents of a bill of particulars, whatsoever is set forth therein, alter, change, amend or affect the bill of information." (At Page 603) See also *Kelly v. State* ex rel. Curry, 92 So.2d 172 (Fla. Supreme Ct., 1956), wherein the court stated: "A bill of particulars is not a part of the pleadings and neither strengthens nor weakens an information to which it is attached." (At Page 174.) Accord: *State v. Lassotovitch,* cited supra, and *People v. Johnson,* 363 Ill. 45, 1 N.E.2d 386 (1936). In view of the answer given to Question 2, it is clear that a bill of particulars is not the appropriate remedy in the instant case. Such a remedy could be utilized by the defendant to gain information as to the specific means allegedly employed in carrying out his alleged intent, but it may not be used to supply a missing element of the offense in question.

Question 4 reads as follows:

"If an indictment for the crime of burglary in the fourth degree (11 *Del. C.,* Sec. 395) is subject to dismissal under Superior Court Rule 12 (b) (3) for ambiguity and indefiniteness as held in *State v. Minnick,* 3 Storey 17, 261, 168 A.2d 93 (1960), does it fail to charge an offense within the meaning of Superior Court Criminal Rule 12 (b (2) ?"

Interpreting this question to ask whether or not a motion to quash this indictment for failure to state an offense may be made at any time during the pendency of the proceedings, we are of the opinion that the answer is, yes.

It is clear that the court in *State v. Minnick,* supra, was not called upon to consider whether or not a motion to quash the indictment was required to be entered no later than five days after arraignment as specified in Rule 12(b) (3) of the Superior Court Rules of Criminal Procedure. The decision in *State v. Minnick* merely held that the indictment was invalid because of failure to specify the particular crime intended to be committed.

As was stated in *Scott v. State,* 10 Terry 401, 117 A.2d 831 (1955), "If the defect is a failure to charge jurisdiction or the commission of an offense, it may not be waived and an objection thereto may therefore be raised at any stage of the proceedings." This principle is embodied in Rule 12(b) (2) of the Criminal Rules of Procedure of the Superior Court, which provides in pertinent part that "[l]ack of jurisdiction or the failure of the indictment or information to charge an offense shall be noticed by the court at any time during the pendency of the proceeding." In view of our answer to Question 2 holding that the indictment in question fails to include an essential element of the offense charged, an objection to the indictment, raising more than informal defects in the language of the indictment, is of such a nature that it may not be waived and may, accordingly, be raised at any stage of the proceeding.